## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LEVI RUFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-cv-761 (TSC) |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Pending before the court is Defendant's motion to dismiss, or in the alternative, motion to transfer.  Upon consideration of the motion, the response and reply thereto, and for the following reasons, the court denies Defendant's motion.

### I.    BACKGROUND

The following facts taken from the Complaint are assumed to be true on a motion to dismiss.  Plaintiff Levi Ruffin was formerly an inmate at the United States Prison in Canaan, Pennsylvania ("USP Canaan").  (Compl. ¶ 10).  During an appointment with a dental hygienist in May 2012, his dental treatment plan was updated to include a plan for extraction of a partially erupted wisdom tooth, tooth #32.  In September 2012, he saw the Chief Dental Officer for USP Canaan, Dr. Rosalind Hartland, and complained of severe pain in his wisdom tooth on his right side.  Dr. Hartland observed that tooth #32 had caries below the bone and that the tooth was impacted.  She diagnosed Ruffin with "dental caries extending into pulp" and recommended removal of the tooth.  (*Id.* ¶ 14).  Dr. Hartland prescribed two medications for Ruffin to take in the interim, but Ruffin alleges it was not enough to adequately relieve his pain.  (*Id.* ¶¶ 16-18).

Not having received the requested extraction, Ruffin complained repeatedly to USP Canaan Health Services about his dental pain, but received no additional treatment. (*Id.* ¶¶ 19-20). In November 2012, two months after Dr. Hartland requested an oral surgeon perform the extraction, Ruffin's name was approved to be put on a list for treatment by an outside specialist in oral surgery. (*Id.* ¶ 21). In the ensuing month, Ruffin filed two administrative grievances to attempt to get treatment. (*Id.* ¶¶ 22-24). The warden at USP Canaan responded to the second grievance by advising Ruffin that he was on a list for treatment by an outside specialist and was scheduled for an evaluation. Around the same time, Ruffin complained to a health administrator "that the hole in his mouth is stinking, bleeding daily, and could be infected." (*Id.* ¶ 26).

On December 13, 2012, Ruffin had another appointment with Dr. Hartland to receive unrelated fillings. He complained of pain in his tooth again, and Dr. Hartland diagnosed him with the same condition in tooth #32. (*Id.* ¶¶ 27-30). Dr. Hartland did not attempt to treat his pain or have the tooth removed, but offered Ruffin a 30-day pureed diet. (*Id.* ¶ 31). Ruffin declined, and a nurse allegedly hit the back of his hands with a clipboard. That same day, Ruffin filed an administrative appeal of his prior grievances.

Around this same time, Ruffin was transferred to a different facility in Philadelphia. Ruffin saw a dentist at that facility, who diagnosed Ruffin's tooth #32 as "bucally inclinded [sic] with curved root," noted that Ruffin was "in severe pain," and that he "was seen in another institution but was not able to get treatment." (*Id.* ¶¶ 39-40). That dentist referred Ruffin for further treatment. Shortly after this appointment, in late January 2013 Ruffin filed another administrative appeal complaining that it had been two months since he was approved to see a specialist but he had not been treated and was still in pain.

Ruffin was later transferred back to USP Canaan, where on May 21, 2013 he was called to the dental clinic to have tooth #32 extracted.  Ruffin, however, declined the extraction.  He claims that because he was less than a month away from being released, he preferred to wait until his release so he could have the tooth extracted by a provider of his own choosing.  (*Id.* ¶ 48).  After he was released, he sought dental treatment, and had tooth #32 extracted at Water Brook Dental in Washington, D.C., on July 17, 2013.  (*Id.* ¶ 52).

Ruffin filed the instant Complaint in April 2014 against the United States for negligence in violation of the Federal Tort Claims Act ("FTCA"), and against Dr. Hartland for violating the Eighth Amendment of the U.S. Constitution.  Defendants filed a motion to dismiss, or in the alternative to transfer the case to the Middle District of Pennsylvania.  After Defendants filed their motion, Ruffin voluntarily dismissed Dr. Hartland from the case, leaving the FTCA claim against the United States as the sole remaining claim.  The United States argues that the case should be transferred to the Middle District of Pennsylvania because the acts which gave rise to Ruffin's claim occurred there, or, if the court retains the case in this district, that it should dismiss Ruffin's claim for failure to state a claim upon which relief can be granted.

## II.   LEGAL STANDARD

### a.   Transfer

A case may be transferred to another venue "[f]or the convenience of parties and witnesses, in the interest of justice . . . ."  28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)).

The moving party bears the burden of establishing that transfer of the action is proper. *Devaughn v. Inphonic, Inc.,* 403 F. Supp. 2d 68, 71 (D.D.C. 2005).

In deciding a motion to transfer venue under § 1404(a), a court must first determine whether the transferee district is one where the action "might have been brought," 28 U.S.C. § 1404(a), and then must balance the private and public interests involved in the proposed transfer to determine "whether the defendant has demonstrated that considerations of convenience and the interest of justice support a transfer." *Barham v. UBS Fin. Servs.,* 496 F. Supp. 2d 174, 178 (D.D.C. 2007).

> b.  <u>Motion to Dismiss Pursuant to Rule 12(b)(6)</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). Although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely[,]" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citation omitted). Moreover, a pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). If the facts as alleged, which must be taken as true, fail to establish that a plaintiff has stated a claim upon which relief can be granted, the Rule 12(b)(6) motion must be granted. *See, e.g., Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

### III.    ANALYSIS

a. <u>Transfer</u>

Before the court may transfer an action to another venue, the moving party must show

that the plaintiff could have brought the action in the proposed transferee district.  28 U.S.C. §

1404(a); *Devaughn,* 403 F. Supp. 2d at 71 (citing *Van Dusen,* 376 U.S. at 622).  Here, Ruffin

does not contest that he could have brought his claim in the Middle District of Pennsylvania,

because the "the act or omission complained of occurred" in that district.  28 U.S.C. § 1402(b);

28 U.S.C. § 1331.  Defendant therefore satisfies the threshold inquiry.

i.   The Balance of Public and Private Interests

The second step in considering whether to transfer a case requires the court to determine

whether considerations of convenience and the interest of justice support transfer.  In doing so,

the court weighs a number of private interest and public interest factors.  *See Devaughn,* 403 F.

Supp. 2d at 72.

1.   Private Interest Factors

The court considers six private interest factors when deciding whether to transfer a case:

(1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3)
whether the claim arose elsewhere; (4) the convenience of the parties; (5) the
convenience of the witnesses, particularly if important witnesses may actually be
unavailable to give live trial testimony in one of the districts; and (6) the ease of
access to sources of proof."

*Sheffer v. Novartis Pharm. Corp.*, 873 F. Supp. 2d 371, 375 (D.D.C. 2012) (internal citations

omitted).

Courts ordinarily give substantial deference to the plaintiff's choice of forum.

*Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 33 (D.D.C. 2008).  However, "where there is

an insubstantial factual nexus between the case and the plaintiff's chosen forum, deference to the

plaintiff's choice of forum is . . . weakened."  *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l*

*Ass'n,* 856 F. Supp. 2d 186, 192 (D.D.C. 2012) (internal citations omitted).  The United States argues that because all the acts which give rise to Ruffin's claim occurred in Pennsylvania, Ruffin's choice of forum should be given significantly less weight than is customary.  While it is true that the purported negligence occurred in Pennsylvania, the court is cognizant of the difficulties that would be created for prisoners convicted in the District of Columbia if this analysis was rigidly applied.  The District no longer has an operating prison, meaning all its prisoners are housed in institutions outside of the District of Columbia.  If courts were never to give the District's returning citizens' choice of forum any weight in cases related to their incarceration, they would likely be routinely forced to litigate their claims in an unfamiliar and potentially distant forum.  While it is true that Ruffin's claim arose outside of this district, and the court will therefore not ascribe the usual deference to Ruffin's choice of forum, it does believe Ruffin's choice is entitled to at least some weight.

Second, the court considers Defendant's choice of forum.  Defendant seeks to transfer the case to the Middle District of Pennsylvania, where the claims arose, and this factor favors transfer.  It is worth noting, however, that the Middle District is not the only place where relevant events occurred.  Ruffin was transferred to a facility in Philadelphia (in the Eastern District of Pennsylvania), and received dental treatment there.

The third factor, where the claims arose, also favors transfer, for the reasons noted above, with the caveat, also noted above, that certain of the relevant events occurred outside of the Middle District.  The fourth factor, the convenience of the parties, weighs slightly in favor of retaining the case in this district.  It would be far more convenient for Ruffin to keep his case here.  While Defendant claims that it would be inconvenient for it to litigate this "Pennsylvania case" in this district, the court is persuaded that the Department of Justice, which is

6

headquartered in the District of Columbia, and which is currently represented in this matter by counsel located in this district, is not unduly inconvenienced by having to litigate this matter in the District, as compared to a plaintiff who is currently incarcerated in D.C. jail pending trial having to litigate in the Middle District of Pennsylvania.

The fifth factor, the convenience of the witnesses, is neutral.  In considering this factor, the court considers "the availability of compulsory process to command the attendance of unwilling witnesses, and the cost of obtaining the attendance of willing witnesses." *Reiffin v. Microsoft Corp.,* 104 F. Supp. 2d 48, 53 (D.D.C. 2000).  Neither party has alleged that any of its witnesses would be unwilling to testify in this district.  *See FC Inv. Grp. LC v. Lichtenstein*, 441 F. Supp. 2d 3, 14 (D.D.C. 2006).  As both parties make clear, there are some witnesses in the Middle District (those involved in Ruffin's treatment) and some witnesses in this district (Ruffin's family members and his dentist at Water Brook Dental).  The court notes that there are also potential witnesses in a third district, the Eastern District of Pennsylvania, where Ruffin was also treated while incarcerated.

The last private interest factor—the ease of access to sources of proof—is neutral, given the portable nature of modern discovery.  *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 36 (D.D.C. 2002) ("the location of documents, given modern technology, is less important in determining the convenience of the parties").  Ruffin claims that he already possesses all the relevant documents in this district, which Defendant disputes.  Even if Defendant is correct that Ruffin's claim to have all the relevant documents is incorrect, and evidence remains to be gathered in the Middle District, it would not be particularly difficult for that evidence to be brought to this district.

2.   Public Interest Factors

The court now considers the public interest factors: "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Foote v. Chu,* 858 F. Supp. 2d 116, 123 (D.D.C. 2012) (citing *Ravulapalli v. Napolitano,* 773 F. Supp. 2d 41, 56 (D.D.C. 2011)).

Under the FTCA, claims are analyzed "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  The Supreme Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994).  The parties agree that the acts or omissions occurred in Pennsylvania, and that Pennsylvania law applies, but they differ on the impact of Pennsylvania law in this case.  Defendant argues that since Pennsylvania negligence law applies, and the Middle District has greater familiarity with the governing laws, this factor favors transfer.  Ruffin argues that the court has to apply the "whole" law of the state, including choice of law rules.  Therefore, "in exercising jurisdiction over Defendant United States under the FTCA, this Court must apply the choice of law provision belonging to 'the place where the act of omission occurred.'" *Raflo v. United States*, 157 F. Supp. 2d 1, 8 (D.D.C. 2001) (citing *Richards v. United States*, 369 U.S. 1, 6-7 (1962)).  Ruffin argues that under Pennsylvania's choice of law provisions, D.C. negligence law would apply because D.C. has a greater interest than Pennsylvania in Ruffin's claims.

While the parties dispute which state has a greater interest in Ruffin's case, they omit the first step in Pennsylvania's (and many other jurisdictions) choice of law analysis—whether there is a conflict between the competing laws at all.  "[T]he first step in a choice of law analysis under

Pennsylvania law is to determine whether [an actual] conflict exists between the laws of the competing states.  If no [actual] conflict exists, further analysis is unnecessary. . . An actual conflict exists if there are relevant differences between the laws." *McDonald v. Whitewater Challengers, Inc.*, 2015 PA Super 104, at *5 (Pa. Super. Ct. Apr. 29, 2015) (internal quotation marks and citations omitted).

Neither party cites the standard for negligence in Pennsylvania or compares that standard to D.C. law to determine whether a conflict exists.  It appears there does not.  *Compare Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) ("to prevail in a medical malpractice action, a plaintiff must 'establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm.'") (internal citation omitted) *with D.C. v. Wilson*, 721 A.2d 591, 597 (D.C. 1998) (explaining in a medical malpractice case that "'[i]n an action for negligence, the plaintiff has the burden of proving [, by a preponderance of the evidence,] the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between the deviation and the plaintiff's injury.'") (internal citation omitted).  Both jurisdictions also require expert testimony in medical malpractice cases.  *See Toogood*, 824 A.2d at 1145; *Wilson*, 721 A.2d at 597.

Because there appears to be no conflict, the parties' analyses of the competing states' interests in this case is unnecessary.  This means the first public interest factor is neutral because familiarity with the governing laws is the same where those laws appear to be identical.[1]

---

[1] The court further notes that federal courts frequently apply the law of states outside their jurisdiction, meaning this factor would not weigh heavily in favor of transfer even where this court to apply Pennsylvania law.  *See Essroc Cement Corp. v. CTI/D.C., Inc.*, 740 F. Supp. 2d 131, 142 (D.D.C. 2010) (applying Pennsylvania law); *Bortell v. Eli Lilly & Co.*, 406 F. Supp. 2d 1, 6 (D.D.C. 2005) (same).

The second factor, the relative congestion of the calendars of the transferee and transferor courts, is neutral.  Ruffin notes that the Middle District has more cases per judge, but Defendant points out that the median time from filing to disposition is similar in both districts.  Neither party has made a compelling showing that the congestion in one or the other court warrants tipping the scales in either direction.

The parties dispute the third public interest factor, the importance of deciding local controversies at home.  Defendant is correct that for purposes of this factor, cases "should be resolved in the forum where the people 'whose rights and interests are in fact most vitally affected by the suit'" are located.  *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 20 (D.D.C. 1996) (citing *Adams v. Bell*, 711 F.2d 161, 167 n.34 (D.C. Cir. 1983)).  But Defendant overstates the Middle District of Pennsylvania's interest in this case.  Unlike in *Trout*, which involved quintessentially local issues of water rights, environmental regulation, and local wildlife, Pennsylvania has a less distinct (although not insubstantial) interest in the adequacy of dental care in its federal prisons—especially for inmates, like Ruffin, whose crimes occurred not in Pennsylvania, but in the District of Columbia, and who are in Pennsylvania only to serve their sentences.  While Defendant discounts any interest this district may have in Ruffin's suit, Ruffin is correct that the District has at least some interest in providing a local forum for its returning citizens to litigate claims regarding mistreatment during incarceration.  To find otherwise would be to discount any interest the District may have over the treatment of its own citizens who, while in prison, are always located in jurisdictions outside of the District.  Both forums have some local ties to Ruffin's case, and this factor does not weigh in favor of either side.

After weighing the various factors applicable to a transfer motion, the court finds that the public and private interests are basically even.  Both parties have an interest in litigating in their

chosen forums, witnesses are located in both forums, and both forums have some interest in the

case.  Because traditionally the plaintiff's choice of forum is given deciding weight (and in this

case Ruffin has a compelling interest in litigating in this district), and because a "tie" means

Defendant as the moving party has failed to carry its burden, the court, in its discretion will deny

the motion to transfer.

      b.  <u>Motion to Dismiss</u>

      Defendant argues that Ruffin has failed to state a claim upon which relief may be granted,

arguing that "[a]llegations alone do not present a genuine issue of material fact," "[c]onclusory

statements unsupported by any specific facts are insufficient to raise a genuine issue of fact," and

"Plaintiff failed to set forth any evidence, aside from his own conclusory allegations, that the

Defendant failed to conform her conduct to the requisite standard or was negligent.  Plaintiff

failed to establish any causal link between the alleged behavior and any injury."  (Def. Mot. 23).

Defendant also claims that each element of Ruffin's negligence claim must be proven by expert

testimony, and failure to do so requires judgment for the United States.

      As Ruffin correctly points out, whether or not there is a genuine issue of material fact is a

question for summary judgment, not a motion to dismiss.  At this stage, Ruffin's Complaint need

only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face."  *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).  Defendant's

allegation that Ruffin has failed to set forth sufficient evidence to prove his claim is irrelevant at

this stage, for "as a general principle of civil procedure, factual proof of a claim is not demanded

at the pleading stage and is instead only sought once the litigation progresses to the discovery

stage of litigation."  *Wilson v. Gov't of D.C.*, 269 F.R.D. 8, 14 (D.D.C. 2010).  Perhaps

recognizing these distinctions, Defendant fails to even reference its motion to dismiss in its reply, and instead focuses exclusively on its motion to transfer.

Ruffin has set forth factual allegations which, if assumed to be true, are sufficient to survive a motion to dismiss.  Under either Pennsylvania or D.C. law, Ruffin's negligence claim requires him to show duty, breach, and causation.  Whether or not Ruffin's treating physicians owed him a duty is a legal question.[2] *See In re Sealed Case*, 67 F.3d 965, 968 (D.C. Cir. 1995). Ruffin sets forth allegations that Dr. Hartland and/or other prison officials or treating physicians breached their alleged duty by repeatedly refusing to extract his tooth and not providing proper treatment while his condition remained ongoing.  Ruffin alleges that he repeatedly filed administrative grievances and appeals to address the situation, to no avail.  Finally, Ruffin alleges that as a result of Defendant's breach, Ruffin suffered severe pain and mental anguish for almost a year.  This is a short and plain statement that puts Defendant on notice of Ruffin's claims, which is all that is required at this stage of the proceedings.

IV.    CONCLUSION

For the foregoing reasons, the court denies the United States' motion to dismiss, or in the alternative to transfer.  An appropriate Order accompanies this Memorandum Opinion.

Date:  July 31, 2015

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

[2] Other courts have held (and Defendant does not dispute) that "physicians owe the same standard of care to prisoners as physicians owe to private patients generally," *District of Columbia v. Mitchell*, 533 A.2d 629, 648 (D.C. 1987), and "federal courts have construed [18 U.S.C. § 4042] to include the duty to provide adequate medical care to all federal inmates." *Hill v. Lamanna*, No. 03-323, 2007 WL 777007, at *12 (W.D. Pa. Mar. 12, 2007); *see also Jones v. United States*, 91 F.3d 623, 625 (3d Cir. 1996).